Good morning, your honors. May it please the court. My name is Bill Severson, representing the appellants, the McClungs. The issue raised in this appeal is whether the nexus and proportionality requirements of Nolan Dolan apply to a monetary land use exaction like the stormwater upgrade obligation that was imposed on the McClungs. Nolan Dolan's scrutiny serves to bar government from using its permit power to extort unfair leverage against permit applicants. Under Nolan Dolan, the permit exaction must address a problem that's created by the proposed project and the exaction must be roughly proportional to the burden created by that project. The McClungs maintain that the policy underlying Nolan Dolan against leveraged extortion against permit applicants equally applies regardless of the type of property that's being exacted. Same rule, same policy applies whether it's land or money or chattels or anything else. So your argument, is there any authority, starting with our court, any authority from our court that supports the application of that particular approach, the Nolan Dolan approach, to an extraction that wasn't an extraction of a real property interest? I don't think the Ninth Circuit has addressed the issue. Okay, so let's go beyond the Ninth Circuit. Authority from elsewhere that permits the application of that set of doctrines to the Yeah, and there's significant authority from, it's mostly state court authority from around the country. The most, the Washington court's benchmark case, of course, is one, the most prominent case, of course, is the Ehrlich case and then the San Remo cases out of California. The Texas case, town of Flower Mound, applies that rule. The Illinois court, the Ohio court applies the rules. I think the Oregon courts have adopted the Ehrlich distinction between adjudicatory and legislative exactions, which bases the application of Nolan Dolan on the nature of the exaction rather than on the type of property that's being exacted. And that's the position that the McClungs take here, whether or not the exaction is subject to Nolan Dolan depends on the nature of the exaction, not the type of property being exacted. I'd like to, I guess, I guess my biggest worry is, it seems to me, that that is one part of this discussion, which one could have if one doesn't get to write this. But the other part of that same discussion is that the McClungs had an offer by the city, that the city offer was given to them. They didn't yelp about the city offer, they didn't counter offer, but they went right through and did exactly what the offer was and took full advantage of the offer by also getting diminished fees charged and all of that. And now they want to come back and say, I don't like my former contract I entered into. Well, let me address the implied contract theory, because that was... Well, that is the theory I'm going under for sure. I mean, they had an offer, they did exactly what the offer suggested, they got everything of the benefit of the offer, and now they don't like it, so they want to get out of it. Yeah, there's... Let me, I guess, respond with, I guess, three points. The first is, from the McClungs' point of view, they didn't view this as a bargaining negotiation with the city. They viewed this as a... It really isn't the issue. From an objective perspective, if you look at what the city wrote to them, how is it not a proposal by the city, but not a statement that you, without question, must install a 24-inch pipe? The context of how it was written was in the context of previous communications indicating that we're only going to approve this project if you put in the 24-inch pipe. So that was the context of it. Secondly, even if they had such an... Excuse me. No, go ahead. Go ahead. Even if there was such agreement, those agreements are not allowed under Washington law. The Ivy Club case and Henderson Homes Club, or Henderson Home v. Bothell case, make clear that the Washington court doesn't enforce those kinds of agreements. And why... Well, you're getting a hole into yourself, because how is the case ripe if Washington courts won't enforce the agreement that your client thinks it entered into? If you challenge it under Washington law, presumably you'd win. We have challenged it under Washington law. We lost that challenge. I thought you put the pipe in. Was there any challenge to that before your client went for the 24-inch pipe? When you're saying the agreement... We didn't do that, but we're not required to exhaust the state administrative remedies. We're required to... Wait a minute. If you tell me there's not a contract because you were obligated to put in a 24-inch pipe, but that the city's insistence was not enforceable under Washington law, then I stop and think, but you go ahead and put in the pipe, how is it you've exhausted the remedy you have under Washington law if you go in and put in the pipe that you say you're not required to put in? See, that was the reason for my question. It seems to me that your argument is now saying that this is not right, because you've never exhausted any remedy to get out of what you now say they demanded you to do. That's why I started there. The McClung's pursued what they viewed as their state law remedies. How? They filed for relief in state court, seeking to, in this case, originally involve both fees and funds. Before or after they put in the 24-inch pipe? This was after, but there is... You did nothing before. So you say that they didn't think they were obligated, and yet they did it anyway. No, I'm not saying that they didn't think they were obligated. I'm saying that they believed, rightfully I believe, that the city had... They viewed the city's letters as imposing on them the obligation to put in the pipe in order to get the permit approval. In fact, that was... Even though that's not what the letter says. I mean, the letters say, as I understand them, you're obligated to put in a 12-inch pipe. Put in the 24, and we'll cancel these fees to cover the extra cost. But none of that was true. They weren't obligated to put in the 12-inch pipe. In the context of the discussions between the engineer and the McClung's and the city engineer made clear, and the trial testimony here makes clear, that the McClung's rightfully believed that they were obligated to put in this pipe to get a permit. Why didn't they challenge all that at an early administrative... Because what Williamson talks about is the final decision maker. And it seems to me what your clients did is they accept the initial sort of offer. There was no... As far as I can tell from the record, no negotiation attempt to negotiate on price, given the fact the city was saying, we're responsible to go from 12 to 24, but you're responsible to upgrade from the 6 to 12. There was no attempt to seek a variance. There was no attempt to go and administratively say, Washington law, what you later said through the Washington court system, Washington law prohibits this. And so isn't that what Williamson, the heart of Williamson is about, is having these open discussions early on at the time of the permit process so that there is a clear final decision? Williamson County doesn't look to the final decision of the administrative process, looking to exhaustion of administrative remedies and to the decision of the final administrative decision maker. It looks to the final decision by the initial decision maker. It's the initial decision maker. We don't really clearly have that because the written correspondence suggests something that you're telling us really can be understood only in the context of discussions, I guess, between the engineers, which seems to me a far cry from an administrative final decision. I mean, if the written correspondence doesn't, by its terms, say there's an obligation to put in a 24-inch pipe, and you're saying your client inferred or understood from the context of the discussions, as I say, I think it's between the engineers, it's hard to find a final administrative decision there requiring a 24-inch pipe since the letters don't say that. Well, the letter itself doesn't comply with the city ordinances. I mean, the decision was supposed to be issued formally. It was supposed to advise Mr. McClung of what his appeal rights are, and instead of doing that... All of that suggests it might not have been final. I mean, it looks to me the city is saying, this is entirely consistent with an understanding of the facts, which says the city believes it's a 12-inch requirement. It wants a 24-inch pipe there. It's willing to offset against fees because it's going to cost your client more. What do you say? And the next thing you know, you've got a 24-inch pipe installed. Sounds like, as the district court found, it's an offer and acceptance. Well, but... Okay. That's not a final administrative decision. If that wasn't final, does that mean it's still not final? I mean, there's nothing that's happened that I'm aware of between then and now, 13 years later, that changes any of that. And if the court's saying that... But how could it change? Your client's the one who could make a change, presumably. The city put forth an offer. The next thing that happens is the permit goes in, including everything the city had requested. And so how could there be any change circumstance? But the terms in which the, quote, offer was put to my client was, if you do this, you can proceed. Now, that's understood by a lay person, not acting under lawyer advice, not, you know, school and all of this. But it doesn't say... Here's the requirement. That's not good enough. Somebody's understanding does not establish that, for the city's perspective, it's final. And to say, well, I thought this means I could proceed, doesn't mean, if I don't do exactly what they say, I couldn't proceed, when on the face of it, the city has not said in writing, you can't go unless you install a 24-inch pipe. Now, the district court may have actually cut a little slack here in saying that he inferred from this the city imposed a requirement of 12-inch pipe, and it's not hard to reach that inference. And that obligation is stated, and the district court decided that obligation was final enough for this purpose. But nothing suggests that a 24-inch pipe was something the city said was a requirement for your client to be able to proceed. The fact that your client may have inferred that, that's not going to be good enough. You need something more than that to establish that that was a final decision by the city. Well, the September letter from the city to the McClung's indicate that the project would not be allowed to go forward without installation of the 24-inch pipe along the entire back line of their property. It was clear from September 29th, I believe. See, the letter I've been paying most attention to is December 27, 1995. Yes. So the September, the earlier September letter, this was, remember, originally the plan was the McClung's were to install a bioswale to deal with the runoff. But we know all that dropped out. That all dropped out. So you can't call the earlier stuff a final decision. It all changed. I understand that. And then in September of 95, they wrote to Mr. McClung and said the existing storm drainage system serving the development is inadequate according to the stormwater comprehensive plan that states, the plan states a 24-inch pipe is required. More importantly, the stormwater pipe along Main Street and Valley must be able to carry this flow of water. So it's making clear in this letter that, and that says the city requires that infrastructure be brought up to standards prior to any new development. So the city's indicated that... Well, but three months later, three months later, the December 27 letter says, as a developer, you are required to install a 12-inch storm drain as a minimum. That's not true. But they said that. They said that. And you're trying to infer from that an obligation to install a 24-inch pipe, which is what your client went ahead and did. Well, what I'm inferring is that he was being required to make an upgrade to the pipe, that that letter was requiring him to make some sort of an upgrade. That's true. And did it to 12 inches to 24 inches. He understood that as he had to make an upgrade to the system to get his permit. The city had no authority to make him make any upgrade to the system. He did nothing about it except to then submit a permit at the 24-inch level and install it. He understood that that was being required of him, and he didn't, he didn't, he had, he simply believed that the city was telling him what they were telling him was true. That's right. He believed the city. Mr. Severance, if you don't mind, because time is ticking on, moving to the second prong of Williamson County, which requires that the landowner see compensation through a state court system. As I understand the facts here, the initial go-round in the Washington state courts didn't involve a takings claim. It was a statutory-based challenge that sort of went up and down in the Washington court system. The original, the original complaint, according to the Washington, there's a, the city claims to the contrary, but the Washington Court of Appeals held that the original complaint was adequate to raise both the constitutional claim and the statutory claims. What was litigated, what was actually litigated were the statutory, state statutory claims. Then there's an amendment to the complaint to include the takings under both state and federal law. I would say to articulate those more expressly. All right. Because they had not been decided earlier. It had not been decided earlier, and then it was remanded to the... It was removed to federal court. And after that, it was removed to federal court. All right. And I understand the district court, there's a motion to remand, which was denied. I understand that. But why is it that we should find that there were, there was, in fact, an attempt through the state court system that satisfies the second prong of Williamson County? Because we did everything that we could to litigate the case in state court. We tried to get back to state court. What the city's arguing is that we can... Doesn't that just mean the district court erred in not remanding it? And so then the remedy for the district court making an error against us is to dismiss our claim? I mean, that's the result of this. It might be for us to remand to the district court with instructions to remand back to state court. That would, you know, that would cure the erroneous decision on removal. That's true. You know, that isn't relief we've asked for, but... Have you found any cases, Ninth Circuit or otherwise, that say when there's a... Other than what the district court found in this case, when you remove to federal court, it obviates the need to comply with the second prong of Williamson County? I think my interpretation of that or understanding of that would be that on removal, the federal trial court takes on the characteristics essentially of a state court because it has all of the authority of a state court. So the removing party is in no position to complain about not having a state court adjudication of the state court claim. Doesn't the Marcy case essentially say otherwise, that removal doesn't satisfy the second prong? I mean, in that case, there was a removal. There had been no state court determination. The district court dismissed, and the Ninth Circuit upheld that on the second prong. How else are we to read that case? Well, I think that's an intolerable, you know, sort of result. And I think that the district court probably, you know, got to the merits and beyond the rightness issues, given that he was going to accept the petition for removal. I mean, the appropriate thing would have been to keep this in state court and have the state court decide it. But it can't be the right answer that you allow the McClungs to do exactly what's contemplated in the second prong rightness, to pursue their state court claims, have the city remove that to federal court, and then have the federal court then dismiss the claim, which eliminates the McClungs from being able to pursue their claims in state court and just puts them out on the street. That just can't be the right answer. So the right answer, if I'm sitting in a district court in the first instance and this motion comes to me, the right answer is to remand everything back to the state court, including the federal claim. Yes. That would have been the, that was what we had asked for, and that would have been the correct answer initially. I'm sorry. Can I reserve the balance of your time for rebuttal? I would like to reserve the balance of my time, if I may. That's fine. Good morning, Your Honors. Mike Walter here for the Appellee City of Sumner. I'm going to kind of diverge from what I was originally going to talk about and try to focus in on some of the good questions that the panel asked counsel for the McClungs. Let me, let me suggest something at the outset here that I may be shooting myself in the courts for a number of reasons, and I'll try to address those as I go through my comments here in a little bit of an out-of-order way. But first and foremost, the questions regarding the Williamson County second-prong exhaustion and ripeness issue, the Article I, Section 16 state Supreme Court taking, or state constitution takings claim, was in fact briefed. It was in fact discussed, and it was in fact decided by Judge Layton in the district court in his decision. That's at pages 14 through 16. He actually went through, did an analysis under the state constitution, and found that they fail, that this case, the claims made based on the undisputed facts in the record, did not support a claim under the state constitution for a state taking. So I guess with all due respect, I would submit that that has in fact been adjudicated. It's been briefed, and I think Judge Layton's decision is well-founded, it's articulate, and it is based on the state constitution and state cases interpreting that statute. He just found there was no state law taking the case. But what if he had no jurisdiction in the first place? Well, and there's an interesting issue there, I guess. It's been a while since, I'm aware of the Macri versus King County case. It's been a long time since I've read that, Your Honor, so I, and I don't think it's in any of the briefs, so I can't stand here and tell you exactly what that holds. But I did not recall that that case actually said that a federal court has no jurisdiction to adjudicate a state constitutional claim. I would, I guess, argue, and again, if Macri says otherwise, I'll eat these words. But that the court, by accepting the federal court jurisdiction under the federal Fifth Amendment claim, has pendant jurisdiction to adjudicate the attached state law claims, and that would include the state constitutional claim. But, but if, if we find the claim is unripe under either prong one or two, then that, that means that the district court did not have jurisdiction over the federal claims. And I don't know what jurisdiction the court would have had over the state claims at that point in time. There's no, there's not diversity jurisdiction, right? No, there's not. This is clearly a question of federal court jurisdiction. You'll have to depend upon supplemental jurisdiction, and you can still have supplemental jurisdiction after you've lost a federal claim from a case. It becomes a discretionary decision and, and very difficult to analyze on appeal years later after the case has proceeded. So I, I, I don't know the answer to that question. Yeah, I, I don't either. I guess, with all due respect, Your Honors, I, I'm sitting here looking at this case, and I, I was an original trial counselor, so I got brought in after the fact. But I'm looking at this going, the events giving rise to this occurred 13 years ago. This case has been in litigation for 10 years. It's been up to the state court of appeals twice. It's been attempted to get to the state Supreme Court once. There's been a bench trial. There have been multiple motions. There I've got five, five. I take it you're not eager to go back to the state court.  And that's why I said I may be shooting myself in the foot. But, you know, with all that said, Your Honors, I, I, I believe there's more than ample undisputed facts in the record and the case law that clearly empowers you folks to affirm Judge Layton's decision. And I think that's what should happen here. Again, you know, I think it's a huge waste of judicial resources to have to say, well, we're going to disregard Judge Layton's decision on the state constitutional claims and send it back and have a state court pick this thing up and try to do the same analysis he did, which almost indisputably, in my opinion, they're going to reach the same result. Well, you know, as they say, federalism is, federalism is messy, and this case may give us that prime example as to why that is. Yeah. And, and I, I agree. I will tell you that, and I can't give you the sites, but it's been years, but I have had federal district court judges in the past adjudicate state claims under 8202, which was one of the claims they had here and under the state constitution, as well as even LUPA claims, but which, which, you know, typically they don't keep. So I do think it's a matter of judicial discretion, I guess. If we find Williamson prong one was not met, the final decision requirement, right? If we find that, that means it was unripe in federal court. Yeah, I guess I would, I would have to agree with you. And so what do we do then in your view? Well, I'm not sure the claim can be ripened at this point, and that presents a quandary. It's a good question, Your Honor. The reason I'm having trouble answering that is because the action that was required of this applicant has been consummated. It's done. The pipe was designed, constructed. It's in the ground. It's, water is flowing through it. The business is open and operating. It has been since early 1997. They're making money and, and I don't know how to unripen that or I shouldn't say unripen, but ripen it without going through a brand new adjudicative process. I have to admit, you've got me stumped. I do a lot of this work and I, I've never, let me, let me ask this. There's a on bonk Washington case, Saddle Mountain Minerals versus Joshi that essentially applies to Washington law, the same first prong as Williamson County does. Okay. Obviously there's no second prong in the state court system itself, but they apply that same first prong, um, that is they apply the final decision rule. And so if the state court final decision rule is consistent, Washington state is consistent with the federal final decision rule and we find it has not been satisfied. Well, with that additional fact, well, let me script this out. The only conceivable way, if that scenario plays out, I just think this is going to be a huge waste of both judicial and party resources. But the only way I can see that happening is it goes back ultimately back to the city. The city engineer or public works director is going to have to craft a final decision that's after the 13 years after the fact of saying you are hereby obligated to install, upgrade your existing six inch line, which was deficient to meet the code requirement for 12 inch line. And then thereafter, we're going to also ask you under RC or the municipal code 1348, 610 to upgrade that to 24 inches. We will pay the difference, which has already happened here through the waiver of the GFCs. And then from that point on, they're going to have to go through the administrative process and probably if they want to challenge that, which I assume they would still, uh, they go to the hearing examiner. I'm not suggesting they can challenge this after the fact. I don't know that they can do that. I'm more concerned of if we do say that this is unripe under claim one, do we simply remand to the district court with instructions to remand the whole case back to the state court and then the state court from the first instance looks at it or do we remand with instructions to reverse? Well, and the case is over at that point in time. Well, I think it would be an affirmance instead of doing that. Why not affirm and say, we're going to affirm on different grounds. We're going to affirm the dismissal of the takings claims on the basis that they're not ripe rather than remanding and sending it back to Judge Layton who may send it back to the state court. Again, it seems to me that is a little more efficient and direct way of achieving the same result. But you know, you're raising an interesting question, but I guess I want to throw something else out and argue that at least under that first prong that I do, I think there's evidence in the record that there was a final decision here. And let me explain where I'm coming from on that. We got two things happening here. We've got a requirement which is adopted legislative in the code to install all stormwater drains in the city for every developer, every property owner, 12 inches, okay? This one is undisputed. It was six inches. They found out. There's a code requirement that mandates that when you apply for any kind of grading, building permit or development, you've got to bring the stormwater infrastructure up to the adopted requirements, which according to their adopted King County surface water manual is 12 inches. The minute that the city sent out the December 27, 1995 letter from Bill Shoemaker, I think that did constitute a final decision because at that point, they're on notice that that code requirement is being triggered because they have applied for a permit or land altering activities. I mean, it says, you know, as a developer, you are required to install, I don't know how it could be more clear. You know, Mr. Severson, the council is saying, well, gee, there's no, there was not a form. Well, they're rarely done on a form. This is the way permit decisions are made throughout cities all across the nation. They're done by letters. This is clear. You are required. I don't know how you can read that either way. I think that was a final decision. Now, as to the second component of this whole upgrade issue, going from 12 inches to 24, the city paid for that. The city indisputably paid for it by waiving the GFC charges and the permit fees in the amount of the stipulated amount of $8,500. The minute that they began construction and installed that line, that, if it hadn't been before, I think ripened into a final decision. I mean, they accepted, whether you look at it as a contract theory or just a, you're complying with the requirement theory, that's a final decision. And whether you look at the date that the city sent this letter on December 27, 1995, or you look at the date that they installed the line, or even if you look further down, the date that they got a building permit or a certificate of occupancy was all long before they filed suit. I think there's a ripened decision there, ripened case. No matter which of those dates you want to pick, it was ripened. And so that's my analysis on this, on the first prong. The second prong then- That's very different than your briefing. Well, I didn't articulate that well, but- No, no. It's very different. And you know what? I lightened up on the briefing because I saw Judge Layton didn't really want to go into the Williamson County analysis. I thought it was a good argument. He didn't, or he didn't think it was as persuasive as just going to the merits. But the law is there, and the facts support that. So if my briefing didn't articulate it that way, I apologize to you, but I'm articulating it that way now. It's not just your briefing didn't articulate it. Your briefing took- 180 degrees. Different view. 180 degrees different. I mean, you said in your briefing, we can sui sponte, essentially, raise the issue of jurisdiction. There's no cross appeal. We can raise that on our own. That's correct. And you argued that there are all of these procedures in place, including an ability to get a variance. This is not a final decision. Williamson prong number one has not been satisfied. Okay. That's very clear from your briefing. Well, all right. And, and, and let me, let me explain it. Because- I thought that's how you were putting your foot. No, I, I may have put my foot in my mouth. You come differently, totally 180 degrees from what I read in your briefing. So what is your final decision? Well, I mean, I think you can look at either, you know- I mean, I was then, and this is now. I mean, I think it'd be practical about it. You'd rather get an affirmance than go back and do this all over again. I would. I think everybody would, to be honest with you, Your Honor, after the hundreds of thousands of dollars in fees and time and courts and everything else that's been involved here. But let me, let me try to explain a little bit on what I was talking about with the exhaustion. I was focusing, and maybe I didn't articulate this well, but I think it was articulated at the trial court level to Judge Layton. The exhaustion argument I was making was not the finality argument. I do believe, and, and maybe I didn't articulate it well, but that this letter and the decision imposed either through the code or through this letter constitutes a final decision. But that's only part of the analysis. The second part, which is what I was focusing on, is you've got to exhaust remedies in order to ripen the claim. And that's why I focused in on the variances, Your Honors. The waiver requirements, the request for a latecomer's agreement, the request for a hearing examiner review, those are all administrative mechanisms to review a final decision. And what my point was, none of those steps were ever taken here at any time. And they were available. And so that was the exhaustion element I was focusing in on in the brief, and maybe not artfully so. But that's the point I was making. And I've cited a pile of cases in the brief, and there was more cited to Judge Layton, saying that where you fail to exhaust available remedies by seeking a variance, by seeking a waiver, by requesting review by a hearing examiner, you have essentially not ripened the claim or you have, your claim is barred because you didn't avail yourself of readily available administrative review procedures that could obviate the need for judicial review. And that was my position, maybe as inartfully it was, or maybe I kind of commingled some things. But... Some things are hard to argue in the alternative. Yeah, they are. And so, you know, have I just totally confused you, Your Honor? I didn't mean to do that, but I... Not totally, but you have confused me. And I guess what I'm having a hard time separating those two sort of threads here, because it seems to me you're, by making the argument you're making, you're also addressing pretty directly the first problem. Did I? And I'm going to go back tonight, believe me, because I won't sleep until I do it. I'm going to go back and look at my brief. Did I actually say in the brief that there was never a final decision here? I don't know that you did, because I just scanned it myself. I sure didn't mean to say that. But the problem is the Ninth Circuit has said, for instance, when you look at the First Prong of Williamson, one thing you need to do for there to be a final decision is seek a variance. And so when you start talking about seeking a variance, it applies directly to that Ninth Circuit law that deals with the first prong on final decision. Okay. So I'm not sure you're reading the final decision correctly. Perhaps or perhaps I was just inartfully commingling those, because, you know, the way these frequently work is a, you know, a requirement is imposed, either informally, formally, et cetera, and the applicant says, you know what, I think that's wrong. I think it's unconstitutional. I think it's illegal. I'm going to go ask for a variance. And they go ask for a variance. That extinguishes the exhaustion, that requirement under Williamson County that you avail yourself of all administrative procedures. But my point is you can look at it a different way and say this letter constituted a final decision because they never did ask for a variance, but they still had an additional exhaustion requirement administratively, and that is they could have asked for a hearing examiner review. They could have appealed this to the hearing examiner. I submit even more than that that what they should have done now in light of the State Land Use Petition Act, which has been in effect since 1995, early 1995, is they should have appealed this through LUPA, the State Land Use Petition Act under RCW 36. Let me stop you for a second. Assume we agree with you on this argument you're now articulating, which was presented in your brief. What's the result of that? What do we do? I think the result still is their Fifth Amendment claim is barred. The question becomes is it barred forever or is it something, in some circumstances, I've had difficulty seeing it here, but in some circumstances, it sounds to me like you're saying it's not ripe. Usually ripeness doesn't lead to total extinguishment of a claim because maybe something happens to ripen the claim. We're back on the road that leads toward remand and potentially remand to state court, which is what at the very beginning you made clear is not the result you're eager to get. Here's the quandary I'm facing. I understand why you don't want to do this all over again if you can wind up winning on the merits, but the argument you're now presenting to us orally in addition to what you presented in the brief seems to me to point to the door that says more litigation. But I don't know why it doesn't lead to more litigation. That's fine, but right now that seems to be what you're telling us. Okay. Well, no, it's not. And believe me, that's the last thing I think anybody, and I would assume Mr. Severson and his client would agree with that too, that that's the last thing anybody wants after 13 years or 10 years of litigation. But, you know, the analysis I think is if the claim is not right, there is no basis to proceed with a Fifth Amendment takings analysis or cause of action. The cause of action, I think, under these facts, which are undisputed, is barred. There's no way to ripen the claim. I guess that's my answer to your question. What I'm trying to say is that at the end of the majority opinion in Williamson County, it said reversed and remanded for further proceedings. I understand that. But, you know, that's, and again, I can't remember all the factual nuances of Williamson, but I think you need to look at the facts of the case and the posture of the case and the posture of the action. This isn't a situation where some event, you know, somebody challenges an action and doesn't actually install the infrastructure or doesn't pay the impact fees or whatever. You can go back, perhaps, and make a, if you believe there's no final decision here, make the final decision and then ripen the claim such that the, you know, you can then get a final decision and decide whether you, the applicant has to comply with the condition. The problem is the applicant has already complied. They've implicitly complied through a contract analysis. We don't under the city rules, if this is too late, if the city would just say you can't come back to us at all at this point, it's 13 years later. I'm not sure what the statute, for another 1983 action, what the statute of limitations Three years. I can answer that for you, Your Honor. It's three years. It's three years and under federal law. Federal law looks to state statutes three years. Is all the time told that we've had to say, I mean, there are a lot of unanswered questions here that it seems to me we're not really in a position to answer. Okay. Well, you know, that's why I think it would be, and again, with all due respect, I think it would be a fruitless exercise to have to do that. I don't, I really don't think you need to get there either. I do think there was a way to look at the letters, look at the decisions that were made, determined that in fact there was a final decision by virtue of the letter and the clear code language, which just mandates us whether or not a letter was written. If they had come in and simply said, you know, I'm going to build, give me a building permit, the city public works or city engineer would have said, oh, we've got a requirement. You should know about this because everybody's deemed to have knowledge of the law here in Sumner Municipal Code 1348, 420 and 480 and all these ordinances says you've got to bring the pipe up to 12 inches. I mean, I don't think you need to have a written decision. The code says it. It requires it. And the comprehensive plan independently had clearly required a 24-inch pipe for this. And the code clearly allowed the city to require a 24-inch pipe when it deemed necessary. It did that in this letter. And so I think when you look at the amalgamation there, you've got a final decision that was never appealed from either administratively or through state processes. So. We thank you for the argument. Thank you, Your Honors. Appreciate it. Mr. Stevenson, you have a little bit of time left. Your Honor, my head's swirling a little bit here because Mr. Walter and I agree that there December 27th constituted a final decision. I mean, you look at the language of the letter and it says a 24-inch diameter storm pipe is to be installed as a condition of development. Now, that was the way the parties have throughout this entire thing have perceived that as a final decision. The briefing, everything is that. And I spent my entire argument time previously talking about some different world. And I think if I had an opportunity to address the world that this being a final decision, who wins, you know, what the proper outcome is, we can get to a final decision without the need for a remand, but I can't do it in four seconds. And I don't think, you know, this case has been going on forever because we've had a lot of sort of wrong turns because of misconceptions about things. And I'm afraid that's going to happen here again. And I would appreciate a chance to at least state very briefly what those arguments would be. Well, we've had lots of briefing from you, so is there anything that you'd say in two minutes that would tell us something that we haven't already picked up from the briefing? Well, let me make just this one point with respect to the upgrade requirement. If you look at the letter on the December 27th, it says to correct existing deficiencies, the upgrade has to be made. The Washington Supreme Court in its benchmark case expressly said you can't impose permit exactions to correct existing deficiencies. That's not allowed under Washington law, period. The pipe here isn't the McClung's pipe. It's the city's pipe. So this is exactly the situation presented in benchmark where the Washington Supreme Court prohibited that exaction. And just as that exaction isn't allowed under Washington law, it isn't allowed under Nolan Dolan for the same reason. And the analysis is exactly the same. And that's where you get to. And there's been confusion all along on whose pipe this is. It's not the McClung's pipe. It's the city's pipe. This is just like the street improvements in benchmark. It's exactly the same. And exactly the same result should apply. Thank you, Your Honor. Thank you for the argument. Thank both counsel for their arguments in this extraordinarily complicated case. We appreciate the help you've given us. That case just argued is submitted.
judges: Clifton, Smith, Seabright